UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTINA ST. CLAIR, an individual,<br><br>                              Plaintiff,<br><br>        v.<br><br>OKANOGAN COUNTY WASHINGTON, a municipal corporation, and ISAIAH HOLLOWAY, an individual and employee of Okanogan County,<br><br>                              Defendants. | NO. 2:23-CV-0280-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

BEFORE THE COURT are Defendant Okanogan County's 12(b)(6) Motion to Dismiss (ECF No. 16) and Defendant Isaiah Holloway's Motion for Joinder in Defendant Okanogan County's Motion to Dismiss (ECF No. 17). These matters were heard without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant Okanogan County's 12(b)(6) Motion to Dismiss (ECF No. 16) is GRANTED and

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 1

Defendant Isaiah Holloway's Motion for Joinder in Defendant Okanogan County's Motion to Dismiss (ECF No. 17) is GRANTED.

## BACKGROUND

These Motions to Dismiss arise from a claim of allege abuse of a position of power from an officer in the Okanogan County Sheriff's Office ("OCSO"). Plaintiff alleges that she was involved in an inappropriate sexual relationship with Defendant Isaiah Holloway which began when he was a deputy and continued through his promotion to detective. ECF No. 18 at 2. Plaintiff alleges the relationship began in 2014, when Defendant Holloway started contacting her in connection to her past criminal activity. ECF No. 11 at 4, ¶ 17. She maintains that during the relevant points of relationship, she was never able to legally consent given her drug addiction. *Id.* at 8, ¶ 49.

The First Amended Complaint ("FAC") alleges that Defendant Holloway took advantage of Plaintiff's drug addiction and past contact with law enforcement to coerce her into a sexual relationship, which amounted to not pursuing criminal investigations against her in exchange for sex. *Id.* at 6, ¶ 31. At one point, Defendant Holloway reminded Plaintiff that she was involved in a burglary that went uncharged after she had begun their illicit relationship. *Id.* at 5, ¶ 26. According to Plaintiff, sexual activity took place while Defendant Holloway was both on and off duty. *Id.*, ¶ 29. Defendant Holloway discouraged Plaintiff from

exposing their affair to others, telling her that no one would believe her given her involvement with crime.  *Id.* at ¶ 32.

Plaintiff alleges that in 2014, after a phone call by a concerned citizen, Okanogan County opened an investigation into her relationship with Defendant Holloway, headed by then Chief Criminal Deputy of OCSO, Dave Rodriguez.  *Id.* at 6, ¶¶ 12, 33.  As part of the investigation, OSCO spoke with Plaintiff, who denied the relationship.  *Id.*  After this initial contact, Plaintiff asserts that OSCO never spoke with her about the investigation again.  *Id.*, ¶ 35.  At the same time, Plaintiff contends that Defendant Holloway had a meeting with management at OSCO about the investigation into his relationship with Plaintiff, and was told "not to do it again," however, the Sheriff's Office took no additional corrective action.  *Id.* at 6–7, ¶¶ 36, 38, 39.  Sometime around this meeting about the misconduct, Plaintiff asserts that her former boyfriend spoke to Deputy Terry Shrable, Defendant Holloway's former partner, about the illicit relationship.  *Id.* at 7, ¶ 40.

After this meeting, Defendant Holloway told Plaintiff that his supervisor had instructed him to stay away from her.  *Id.*, ¶ 42.  However, Plaintiff alleges that their sexual relationship continued from 2014 until 2021, in which they engaged in sexual contact at least twenty times.  *Id.*, ¶¶ 46.  The FAC alleges that the last time Plaintiff and Defendant Holloway had sex was in 2019, but that sexual communication continued into 2021.  *Id.* at 15, ¶¶ 79, 83.  Plaintiff states that even

into 2021, she saw Defendant Holloway a handful of times, and he attempted to initiate sexual contact. *Id.* at 15, 16, 17 ¶¶ 83, 84, 90. It appears from the contents of the FAC, the relationship hit a turning point when Plaintiff learned through a November 2021 news article that Defendant Holloway was engaging in sexual relationships with other women who also had been the target of local law enforcement. *Id.* at 18, ¶¶ 96–97. However, Plaintiff contends that she still felt controlled by Defendant Holloway, and therefore deleted all their communication in the Spring of 2022, though it is unclear what compelled her to do this. *Id.* at 19, ¶ 102. At all times, Plaintiff felt she had no power to refuse the relationship because she was involved in criminal activity, and Defendant Holloway, as an officer of the law, used his position of power as a coercive tactic over her. *Id.* at 8, ¶ 50.

Simultaneously, the FAC alleges that OSCO was aware that Defendant Holloway was using his position of power to take advantage of four other women who were involved in criminal activity, like Plaintiff. *See generally Id.* at 22–39, ¶¶ 115–222. Further, the FAC alleges that OSCO did not conduct a proper investigation, and either intentionally disposed of evidence related to the 2014 Complaint concerning Plaintiff, or alternatively that it recklessly disposed of information that it had retained relating to the claim. *Id.* at 20, 39 ¶¶ 106–11, 223. The FAC alleges that Defendant Holloway was moved to different duties away

1    from the City of Okanogan, rather than formally reprimanded for his conduct with

2    Plaintiff. *Id*. at 11, ¶ 66.  In fact, Plaintiff alleges that Defendant Holloway was

3    eventually promoted to detective.  *Id*. at 16, ¶ 84.  The FAC goes on to detail a

4    repeated pattern of inappropriate relationships between various members of OSCO

5    and other women. *See generally id*. at 42–48, ¶¶ 237–277.

6        Against Defendant Okanogan County, Plaintiff has alleged a 42 U.S.C. §

7    1983 claim of a violation of her Fourteenth Amendment right based on *Monell*

8    theory of liability, a violation of the Washington Law Against Discrimination

9    ("WLAD") RCW 49.60, negligent supervision, and conspiracy.  *Id*. at 51, 59, 60,

10   62.  Against Defendant Holloway, Plaintiff has alleged 42 U.S.C. § 1983 claim

11   based on violations of her Fourth and Fourteenth Amendment rights, a violation of

12   WLAD RCW 49.60, and conspiracy.  *Id*. at 48, 59, 62.

13       Defendant Okanogan County filed a 12(b)(6) motion to dismiss Plaintiff's

14   FAC, to which Defendant Holloway seeks joinder.  ECF Nos. 15, 16.  Defendant

15   Okanogan County asserts that dismissal is warranted because any claim Plaintiff

16   may have had is now barred by the relevant statutes of limitations.  ECF No. 16 at

17   9.  Further, the County argues that Plaintiff is unable to support a *Monell* claim

18   against it based on the action of Defendant Holloway and other employees because

19   she does not state a specific enough claim on which relief can be granted.  *Id*. at

20   10–11.  It argues that Plaintiff's WLAD claim against it is equally untenable given

the three-year statute of limitations, and Plaintiff offers no evidence that the County was aware of any discriminatory relationship beyond the investigation in 2014. *Id.* at 16–17. Further, it contends that any complaint of negligence cannot be sustained against the County, nor does she properly plead conspiracy. *Id.* at 17–18. Defendant Holloway's arguments echo much of the County's, as he asserts that much of Plaintiff's FAC is time-barred. ECF No. 17 at 7.

Plaintiff's Response to Defendant Okanagan County details that the injurious conduct of the County was not known to her until after seeing the November 2021 article about other similarly situated women Defendant Holloway was carrying on relationships with, and therefore her claims are timely. ECF No. 18 at 10–11. Further, she argues her WLAD, negligent supervision, and conspiracy claims are all properly plead. *Id.* at 20–21.

As to Defendant Holloway, Plaintiff argues that her claims should not be dismissed because the offending activities were ongoing, and she did not have a full understanding of her injury until November 2021. ECF No. 19 at 6. Both replies reiterate arguments made in the initial motion to dismiss. ECF Nos. 20, 21.

## DISCUSSION

### I.    Federal Rule of Civil Procedure 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be

granted." A 12(b)(6) motion will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences … to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. Instead, a plaintiff must show "factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. 662.

## II.    Claims Against Defendant Holloway

### A. Section 1983 Claim

Plaintiff brings a § 1983 claim based on Defendant Holloway's violation of her Fourth Amendment right to privacy and freedom from unreasonable search and seizure, and Fourteenth Amendment right of equal protection under the law, through misuse of his state power. ECF No. 11 at 48–49, ¶ 279.

A § 1983 claim requires a plaintiff to prove that (1) a person acting under color of state law (2) committed an act that deprived the plaintiff of some right,

privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). Because § 1983 does not have its own statute limitation, federal courts will apply the forum state's limitation period for tort actions. *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007); *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under Washington law, this period is three years. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (citing RCW 4.16.080(2)). However, federal law determines when § 1983 statute of limitations accrue. *Elliott v. City of Union City,* 25 F.3d 800, 802 (9th Cir. 1994). The Ninth Circuit has held that the statute of limitations begins to run when the plaintiff, "knows or has reason to know of the injury that forms the basis of the claim." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994).

The Court finds that the claims against Defendant Holloway are time-barred because the relevant activity began in 2014, making Plaintiff's claims untimely sometime in 2017 or shortly thereafter. As is plain on the face of her FAC, the statute of limitation in this matter would have begun when Plaintiff was made aware that her relationship with Defendant Holloway was in exchange for her criminal activity remaining uncharged and unpursued. ECF No. 11 at 6, ¶¶ 31–32. Though Plaintiff asserts she was unable to consent to sexual contact due to her

drug addiction, she does not allege she was actively under the influence of methamphetamine during the sexual contact. *Id.* at 5, ¶ 24. She is able to recall that Defendant Holloway told her that she should not tell anyone about their relationship because no one would believe her, and that she knew he was choosing not to pursue charges against her because of the nature of their relationship. *Id.* at 6, 8 ¶¶ 32, 48, 49. Within the totality of the circumstances, Plaintiff felt as though she could not escape the relationship, nor that she could she end their relationship given the incriminating material Defendant Holloway held over her head. *Id.* at 8, 15 ¶¶ 49, 79. This set of facts is indicative of a situation in which Plaintiff had reason to know that her Fourth and Fourteenth Amendment rights were being violated from the outset, and thus she would have necessarily needed to bring a claim by 2017. Notwithstanding that the statute of limitation of three years has already run, Plaintiff argues in this situation, the Court should apply either the doctrine of equitable tolling or consider the matter under a theory that the relationship is a continuing violation. ECF No. 18 at 13 n. 7.

Plaintiff asserts that because Defendant Okanogan County took steps to destroy evidence predating 2019, the statute of limitation at it relates to her claim should be equitably tolled because she had no recourse to discover her injury. *Id.* "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary

circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). To establish equitable tolling, a claimant is required to show "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in her way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). When taken in the light most favorable to the Plaintiff, there is no suggestion that she was diligently pursuing her claims up until the time it was discovered the OSCO records were destroyed. On the contrary, the crux of Plaintiff's claim is that she was unaware she had experienced harm until November of 2021. The Court finds this is not the "extraordinary circumstance" that is required by doctrine of equitable tolling because Plaintiff was not actively seeking the alleged destroyed materials until three or more years after they were destroyed.

Likewise, the Ninth Circuit has affirmatively disavowed the doctrine of continuing violation except in situations of hostile work environment claims and class-wide pattern-or-practice claims. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019). Plaintiff tries to rescue this argument by referencing other cases in which individuals were able to essentially stay their statute of limitations until they realized there had been a violation of their protected rights resulting from a sexual relationship with a power imbalance. *See Simmons v. U.S.*, 805 F.2d

1363, 1368 (9th Cir. 1986); *see also J.I. v. U.S.*, 2007 WL 2751597 at *8 (W.D. Wash. Sept. 19, 2007); *A.T. v. Everett School Dist.*, 2017 WL 783673 at *3 (W.D. Wash. Feb. 28, 2017).  However, each of these cases appears to be distinguishable from the facts at hand.  In *Simmons*, the Court determined that the statute of limitations for plaintiff's injury under FTCA began to run when she discovered years later that the root of her psychological problems stemmed from the sexual relationship she had with her mental health counselor while under his care.  805 F.2d at 1368.  While the court in *Simmons* held that "what [the plaintiff] knew and when she knew it are questions of fact for the jury," in this case, Plaintiff and Defendant Holloway were engaged in a *quid pro quo*, and Plaintiff has stated in her FAC that she knew at the time the relationship involved an imbalance in power.  *Id.*; see also ECF No. 11 at 6, 8, ¶¶ 31–32, 50.  Plaintiff's claim is similarly distinguishable from *J.I. v. United States*, and *A.T. v. Everett School District,* both which are FTCA cases involving grooming and sexual abuse of minors by people in authority positions.  No. C06-5674RJB, 2007 WL 983138, at *1; No. C16-1536JLR, 2017 WL 784673, at *3.  Further, *A.T. v. Everett School District* supports the Court dismissing Plaintiff's claim:

> If the court were to accept as true A.T.'s assertion that she did not know of her injury until 2015, then her complaint would survive Mr. Verver's motion to dismiss. But this allegation does not appear on the face of A.T.'s complaint . . . In fact, all of A.T.'s allegations are confined to the period from 2001 to 2003 . . . The first mention of A.T.'s 2015 panic attack is in her response to Mr. Verver's motion to dismiss . . .

1
2
Considering only the face of A.T.'s complaint, then, it is apparent that the statute of limitations has run. The court therefore dismisses A.T.'s claim against Mr. Verver as untimely.

3
No. C16-1536JLR, 2017 WL 784673, at *3.

4

5

6

7

8
Plaintiff's FAC states that she was uncomfortable in the relationship while it was ongoing but felt like she was unable to leave.  As such, the Court does not find that, even when taken in the light most favorable to her, Plaintiff's FAC can plausibly argue § 1983 claims against Defendant Holloway given the relevant statute of limitations, and thus it is dismissed without leave to amend.

9

10

11

12

13

14

15

16

17

18

19

20
As to Plaintiff's "acting in concert" claim, the Ninth Circuit has held that the statute of limitations begins to accrue for a conspiracy to commit civil rights violations when "the primary injury complained of occurs" rather than when "the last over act of the conspirators alleged to have caused damages." *Thomas v. Miller*, 928 F.2d 409 (9th Cir. 1991).  Because Plaintiff's civil conspiracy claim is necessarily based on the same three-year statute of limitations that bars the § 1983 claim, it is also dismissed without leave to renew.  *See W.G. Platts, Inc. v. Platts*, 73 Wash.2d 434, 439 (1968) (finding that civil conspiracy is not, by itself, an actionable claim, and instead a plaintiff must be able to show the conspiracy was accomplished through an underlying actionable claim); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999) (holding that to prove a § 1983 civil conspiracy claim, a plaintiff must establish (1) the defendant agreed to

1  deprive plaintiff of a constitutional right, (2) an overt act in furtherance of the

2  conspiracy, and (3) a constitutional violation); see also *Williams v. Geico Gen. Ins.*

3  *Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020) ("Because the conspiracy must

4  be combined with an unlawful purpose, civil conspiracy does not exist

5  independently – its viability hinges on the existence of a cognizable and separate

6  underlying claim.").

7  **B. WLAD Claim**

8  Plaintiff's claim against Defendant Holloway under the WLAD, RCW

9  49.60, is similarly time barred under the three-year statute of limitations imposed

10  by RCW 4.16.080(2). *Antonius v. King Cnty.*, 153 Wash. 2d 256, 269 (2004)

11  (rejecting the continuing violations doctrine as it relates to WLAD statute of

12  limitations accrual). Thus, the WLAD is also dismissed without leave to amend.

13  **III.   Claims Against Okanogan County**

14  **A. *Monell* Claim**

15  Plaintiff alleges that Okanogan County violated her Fourteenth Amendment

16  right through an OCSO policy which allowed officers to use their position of

17  power to target and sexually exploit women involved in criminal activity. ECF

18  No. 11 at 51–71, ¶¶ 288–303. Defendant Okanogan County asserts any action

19  levied against it would be outside the relevant statute of limitations, and that

20  Plaintiff's FAC does not support the claims she is alleging. ECF No. 16, 9–10.

At the outset, the Court must decide whether the statute of limitations of the § 1983 claim against Defendant Okanogan County has also run.  Plaintiff argues that her *Monell* claim is timely because she did not discover her injury derived from a practice or policy of OSCO until she read the November 2021 article.  ECF No. 18 at 11.  The Ninth Circuit has held, "a 'claim accrues' not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'" *Bonneau v. Centennial School District No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *Lukovsky v. City & Cty. of S.F.,* 535 F.3d 1044, 1050 (9th Cir. 2008)).  The Court finds *Wilson v. Hays*, 228 F. Supp. 3d 1100, 1112 (S.D. Cal. 2017) instructive as analogous to the facts of Plaintiff's claim.  In *Wilson*, the Central District of California found that the plaintiff's § 1983 claim against an officer who sexually battered her while he was on duty was time-barred because it began to accrue when the incident occurred, and she brought her claim against him past California's statutory period. *Id.* at 1108.  Yet, the court allowed plaintiff's *Monell* claims against the City of San Diego to move forward. *Id.* at 1112.  The court determined that because the plaintiff was homeless and destitute at the time, she had no way of learning within the statutory period that her injury potentially stemmed from a San Diego Police Department custom or practice, and thus that claim began accruing when she gained access to that relevant information. *Id.*

As the Ninth Circuit has not formally decided when delayed accrual raised by a *Monell* claim under 18 U.S.C. § 1983 begins, the Court finds that Plaintiff's cause of action against Defendant Okanogan County is not time-barred. *Caples v. City of Phoenix*, 804 F. App'x 595, 596 (9th Cir. 2020). Taking Plaintiff's FAC as true, she had limited resources to discover information relating to an office-wide acquiescence to employees of OSCO engaging in sexual relationships with women that they should have been pursuing criminally. For one, Plaintiff maintains she was addicted to methamphetamine, and had several run-ins with law enforcement during the relevant statutory period. ECF No. 11 at 5, 8, 17, ¶¶ 24, 25, 49, 88. The Court accepts as true that Plaintiff could not have understood the scope of the Sheriff's office alleged policy while she was engaged in a relationship with Defendant Holloway, as underscored by her reaction to the November 2021 article. *Id*. at 18, ¶¶ 96–97. Plaintiff alleges Defendant Holloway told her that he did not have sexual relationships with other women, and that he denied such allegations when Plaintiff confronted him, adding credibility to the contention that it would have been difficult to discover that the alleged conduct spanned beyond her relationship. *Id*. at ¶¶ 91–92.

However, Plaintiff must still establish some facts to support her claim of an OSCO practice or policy that deprives individuals of their constitutional rights. "In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff

must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct." *Shearer v. Tacoma Sch. Dist. No. 10*, 942 F. Supp. 2d 1120, 1135 (W.D. Wash. 2013) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). A Plaintiff may establish a policy, practice, or custom in three ways by showing that (1) an employee was acting pursuant to an expressly adopted official policy, (2) an employee was acting pursuant to a longstanding practice or custom, or (3) an employee was acting as a final policymaker. *Lytle v. Carl*, 382 F.3d 978, 982–83 (9th Cir. 2004).

If no such government policy exists, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *see also Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (finding two incidents insufficient to establish custom).

If a plaintiff cannot establish an informal custom or practice, they may still

establish, in limited circumstances, that the local entity had a practice of deliberate indifference to constitutional violations of others through a failure to train employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Though slightly convoluted because it appears the analysis bleeds together, Plaintiff alleges both an active policy of constitutional violations and a pattern of deliberate indifference by OSCO. ECF No. 18 at 14. Specifically, Plaintiff alleges that the environment of OSCO resulted in:

> [P]olicies, practices or customs [that] were intentional and created a culture of unaccountability and a custom whereby the OCSO would turn a blind eye towards its employees' misconduct and whereby the employees knew they could get away with such behavior without risk of losing their job. In the alternative, the OCSO's combined policies, practices or customs were done with a reckless disregard for their consequences and the threat they posed to county residents.

ECF No. 11 at 41, ¶ 234.

### 1. Actual Practice or Custom

Defendant Okanogan County argues that Plaintiff offers nothing but conclusory accusation against OSCO, and thus cannot support a finding that the office had a practice of allowing employees to use their position to commit violations. ECF No. 16 at 13. Plaintiff argues that Defendant Okanogan County turned a blind eye to the activities of the deputies, creating essentially a safety net for constitutional violations. ECF No. 18 at 15. This was accomplished, in part Plaintiff seems to argue, through a destruction of records, and a practice of not

1    pursuing or responding to complaints against OSCO.  *Id;* ECF No. 11 at 39–41, ¶¶
2    223–234.

3        "Liability for improper custom may not be predicated on isolated or sporadic
4    incidents; it must be founded upon practices of sufficient duration, frequency and
5    consistency that the conduct has become a traditional method of carrying out
6    policy." *Trevino*, 99 F.3d at 918.  These policies "may be inferred from
7    widespread practices or 'evidence of repeated constitutional violations for which
8    the errant municipal officers were not discharged or reprimanded.'"  *Nadell v. Las*
9    *Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting *Gillette v.*
10   *Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).  "Proof of random acts or isolated
11   events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th
12   Cir. 1995).  "A plaintiff cannot prove the existence of a municipal policy or custom
13   based solely on the occurrence of a single incident of unconstitutional action by a
14   non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233
15   (9th Cir. 1989).

16       In support of the argument that OSCO had an actual practice of allowing
17   employees to commit constitutional violations, Plaintiff offers her own experience
18   with Defendant Holloway as compared to instances in which Defendant Holloway
19   or other OSCO employees engaged in what she describes as inappropriate sexual
20   relationships.  ECF 11 at 22–39, 42–48, ¶¶ 115–222, 237–277.  While the Court is

dubious of the inference this evidence may suggest a potential future trial, the Ninth Circuit has held that complaints or testimony from other individuals experiencing the same constitutional violations may be used to develop a *Monell* claim. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015). However, even when taken in light most favorable to Plaintiff, these allegations are, for the most part, highly generalized:

> Upon information and belief, Deputy Holloway had a sexual relationship with another drug addicted and practicing criminal female in Okanogan County, K.H, while he was employed with the OCSO.

*Id.* at 42, ¶ 235.

> Upon information and belief, women who were drug addicts or criminally involved, have admitted that they had a sexual relationship with Holloway or that Holloway attempted sexual activity with them while he was employed with the OCSO.

*Id.* ¶ 236.

> Upon information and belief, J.W. had an inappropriate sexual relationship with a woman, S.R., while he was employed with the OCSO. At the time of the inappropriate relationship, S.R. was a known criminal and drug user.

*Id.* ¶ 238.

> Upon information and belief, T.P. had an inappropriate sexual relationship with a woman involved in the criminal justice system, A.B., who he booked into jail and pursued after her release for a sexual relationship.

*Id.* at 46 ¶ 266.

1

2

> On or about October 2019, a complaint was lodged against J.W. to Sergeant Tait Everett that J.W. was inappropriately using his position to assist and provide favors for K.F., a married woman with whom he was having a sexual relationship (the "K.F. Complaint").

3

4

*Id.* at 43, ¶ 243.

5

6

> J.W. was inappropriately involved with and investigated at least two separate incidents where K.F. was involved after he had started a sexual relationship with K.F.

7

*Id.*, ¶ 244.

8

These allegations, among others, are not enough to establish that the OSCO

9

had an active practice of allowing sheriff's deputies to violate the Fourth and

10

Fourteenth Amendment rights of others. Though it does provide information about

11

Defendant Holloway that supports the notion of OSCO turning a blind eye to

12

misconduct, much of Plaintiff's lengthy FAC is devoid of specific information as

13

to the illicit nature of the relationships of other individuals at OSCO. The Court

14

finds that the FAC supports only a sporadic collection of the illicit relationships

15

taking place at OSCO, rather than a detailed description of a pattern that would

16

allow the Court to draw the inference of an internal sanctioned practice. Further,

17

some of the allegations do suggest that OSCO investigated the actions of other

18

employees, while others suggest OSCO never had the opportunity to investigate

19

because the conduct wasn't reported:

20

> While Holloway was still employed with the OCSO, the OCSO became aware of an allegation that Holloway was attempting to exchange

sexual favors from M.G. for favorable treatment by the OCSO in investigations and while acting under color of state law.

ECF No. 11 at 22, ¶ 120.

Upon information and belief, the K.F. Complaint against J.W. *was never* investigated.

*Id.* at 43, ¶ 245 (emphasis added).

Upon information and belief, J.W. *was* investigated by the OCSO for his inappropriate sexual relationship with S.R. and Jane Doe 1 prior to October 31, 2019.

*Id.* at 42, ¶ 240 (emphasis added).

Upon information and belief, B.I. was caught by the OCSO for the inappropriate sexual relationship and put on probation.

*Id.* at 45, ¶ 259.

T.P.'s inappropriate sexual relationship with A.B. was brought to the OCSO's attention but, upon information and belief, the OCSO *never* investigated it.

*Id.* at 46, ¶ 268 (emphasis added).

During the investigation, the OCSO contacted V.O. at her home, while her boyfriend and her children were present, and asked if she had an inappropriate relationship with Deputy Holloway. V.O. told the OCSO that she and Holloway did not have such a relationship.

*Id.* at 33, ¶ 195.

Plaintiff also denied that she was in an illicit relationship when ask,

"Okanogan County, by and through Dave Rodriguez, the Chief Criminal Deputy of

the OCSO at the time, while investigating the C.S.C. Complaint in approximately

2014 . . spoke with [Plaintiff] . . . who denied the C.S.C. Complaint at the time."

*Id.* at 6, ¶ 33. Most of the aforementioned allegations do not delve into the specific

kind of "inappropriate" relationships that were taking place, and likewise do not

suggest officers were on duty or offering favors in connection with criminal

activity. Some of the allegations levied do suggest that OSCO did not enter into an

investigation relating to an allegation of sexual misconduct, but not nearly enough

to create an informal policy of faulty investigations for the purposes of supporting

a pattern. Outside of a recitation of the allegation itself, Plaintiff offers nothing to

suggest that OSCO had a pattern of turning a "blind eye" to constitutional

violations of other unnamed employees, because in some cases presented no

constitutional violation is alleged, or the whether the victim made the conduct

known is not detailed.

Plaintiff does offer four other women with similar and detailed experiences

with *Defendant Holloway* that resemble her own. ECF No. 11 at 22, 25, 26, 30 ¶¶

199–20, 137, 144, 172. In the case of M.G., Plaintiff does allege that Defendant

Okanogan County knew of the violations and chose to take no action. *Id.* at 22,

¶120. However, these four instances are not sufficient to allege a pattern or

practice by OSCO, because they do not implicate any other employee committing

similar acts. Further, it is not clear if two of the victims, M.S.P, a minor at the

1  time, and R.S.P., made OSCO aware of the *quid pro quo* relationships they were

2  engaged in with Defendant Holloway, and thus the Court cannot discern whether

3  OSCO would have a reason to know that constitutional rights were allegedly being

4  violated. *Id.* at 25, 26 ¶¶ 138, 145. A specific allegation that Plaintiff lodges

5  against a different OSCO employee, "B.I.," is tempered by the fact that he was

6  terminated, and therefore reprimanded, before being rehired. *Id.* at 45–46 ¶¶ 258–

7  63.

8        When taken in the light most favorable to the Plaintiff, the allegations that a

9  failure to reprimand other employees of OSCO do not support, or often even touch

10  on, an abuse of power such that the Court may draw an inference that would

11  constitute a pattern, custom, or practice. The face of the FAC supports no more

12  than a sporadic combination of events that cannot be attributed to an office wide

13  policy of turning a blind eye to constitutional violations.

14              *2. Deliberate Indifference*

15        Plaintiff also makes an argument that Defendant Okanogan County failed to

16  train and supervise employees, leading to deliberate indifference to the harm

17  OSCO deputies caused in their line of work. ECF No. 11 at 57, ¶ 301. Defendant

18  Okanogan County argues that Plaintiff provides no evidence that the County was

19  ever on notice that violations were taking place within the sheriff's office, and that

20  such training to instruct officers to not have sexual relationship with women they

1    could charge with crimes is beyond what should be expected.  ECF No. 16 at 12.

2         "In limited circumstances, a local government's failure to train its

3    employees on their legal duties not to violate citizens' rights may rise to the level

4    of a policy or custom for the purposes of a § 1983 claim."  *Connick v. Thompson*,

5    563 U.S. 51, 61 (2011).  However, "[a] municipality's culpability for a deprivation

6    of rights is at its most tenuous where a claim turns on a failure to train."  *Id.*  To

7    succeed on a § 1983 claim alleging a failure to train, the challenged action must

8    amount to "deliberate indifference to the rights of persons with whom the

9    untrained employees come into contact."  *Id.* (internal brackets and citation

10   omitted).  The high standard of deliberate indifference requires proof of a

11   municipal actor's disregard for a known or obvious consequence such actions.

12   *Connick*, 563 U.S. at 61.  A plaintiff may accomplish this by establishing that "the

13   municipality exhibited deliberate indifference to the violation of her federally

14   protected rights" by pointing "to a pattern of prior, similar violations of federally

15   protected rights, of which the relevant policymakers had actual or constructive

16   notice."  *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141–42 (9th Cir.

17   2020).  Or may show "in a narrow range of circumstances," based on the duties or

18   job description of the specific employees, "the need for more or different training

19   is so obvious, and the inadequacy so likely to result in the violation of

20   constitutional rights, that the policymakers of the city can reasonably be said to

1    have been deliberately indifferent to the need." *Bd. of Cnty. Comm'rs of Bryan*

2    *Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997); *City of Canton*, 489 U.S. at 390.

3    Plaintiff's argument for deliberate indifference fails for many of the same

4    reasons as above. She offers specific support of this policy of unaccountability in

5    OSCO through a lack of necessary training, lack of discipline for misconduct, an

6    internal policy of mishandling internal investigations, and a failure in supervision.

7    ECF No. 11 at 56–58, ¶¶ 299–301. She alleges that OSCO was on constructive

8    notice due to a pattern of employees engaging in inappropriate violations of Fourth

9    and Fourteenth Amendment rights of women, failing to pursue complaints against

10   deputies, and ultimately turning a "blind eye" to the violations made by deputies,

11   such that training was necessary. *Id.* at 58, ¶¶ 302.

12   Drawing all reasonable inferences in favor of Plaintiff, it does not appear

13   that Defendant Okanogan County would be on proper notice that training was

14   lacking. In some instances, it seems OSCO took steps to provide investigations,

15   reprimand, and termination for some complaints made against deputies. *Id.* at 33,

16   42, 45 ¶¶ 196, 240, 259, 261. In other instances, it isn't clear from the contents of

17   the FAC whether individuals who were harmed by employees of OSCO reported

18   their interaction with employees to the Sheriff's Office. *Id.* at 25, 26 ¶¶ 139, 145.

19   And still, other allegations made by Plaintiff do not appear to address

20   constitutional violations at all because Plaintiff does not allege a *quid pro quo*

1    relationship. *Id.* at 42, 46 ¶¶ 238, 239, 266, 267. Even taking into account the

2    specific allegations lodged against Defendant Holloway, B.I., and J.W., it is not

3    apparent that the events would clear the high bar required by deliberate

4    indifference and cause Defendant Okanogan County to be on notice that training

5    throughout the department was lacking.

6          When taken together, and read in the light most favorable to her, Plaintiff

7    does not allege enough to support "more than labels and conclusions, and a

8    formulaic recitation of the elements," and therefore her § 1983 claim under *Monell*

9    against Okanogan County is dismissed. *Twombly*, 550 U.S. at 555.

10          Plaintiff has filed two Complaints and according to her own second

11   Complaint denied the allegations against Defendant Holloway. ECF No. 11 at ¶

12   33. At this time, the Court finds that it is absolutely clear that no amendment will

13   cure the deficiencies in Plaintiff's First Amended Complaint.

14          **B. <u>State Law Claims</u>**

15          The remaining WLAD claim and the negligent supervision and retention

16   claim against Defendant Okanogan County both derive from state law. Because

17   the Court dismissed the federal § 1983 claim, it does not retain supplement

18   jurisdiction over the remaining state law causes of actions, and they are moot even

19   if properly plead. 28 U.S.C. § 1367(c)(3).

20   //

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant Okanogan County's Motion to Dismiss (ECF No. 16) is **GRANTED**. Defendant Okanogan County is **DISMISSED with prejudice.**

2.  Defendant Isaiah Holloway's Motion for Joinder in Defendant Okanogan County's Motion to Dismiss (ECF No. 17) is **GRANTED**. Defendant Isaiah Holloway is **DISMISSED with prejudice**.

3.  Plaintiff's recently filed Motion for Permission to File Surresponse, ECF No. 24, and Motion to Expedite, ECF No. 25 (including counsel's Declaration at ECF No. 26), have been reviewed and do not change the decision of the Court. These motions are **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

DATED February 12, 2024.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 27