1
2
3
4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   CHRISTINA ST. CLAIR, an
    individual,                              NO. 2:23-CV-0280-TOR
8
                        Plaintiff,           ORDER DENYING PLAINTIFF'S
9                                            MOTION FOR RECONSIDERATION
        v.
10
    OKANOGAN COUNTY,
11  WASHINGTON, a municipal
    corporation; and ISAIAH
12  HOLLOWAY, an individual and
    employee of the OKANOGAN
13  COUNTY SHERIFF'S OFFICE,

14                      Defendants.

15      BEFORE THE COURT is Plaintiff's Motion for Reconsideration (ECF No.

16  29).  This matter was submitted for consideration without oral argument.  The

17  Court has reviewed the record and files herein and is fully informed.  For the

18  reasons discussed below, Plaintiff's Motion for Reconsideration (ECF No. 29) is

19  DENIED.

20

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION ~ 1

**BACKGROUND**

Plaintiff requests the Court either reverse its dismissal of her claims against Defendant Isaiah Holloway and Defendant Okanogan County, or alternatively alter the judgment and grant her leave to amend.  The Court incorporates the facts from its motion to dismiss (ECF No. 27 at 2–6) but notes the addition of the admission by Defendant Holloway that he engaged in a sexual relationship with Plaintiff, which he previously denied in a separate matter under penalty of perjury.  ECF No. 22 at 8, ¶ 28.  Plaintiff asserts that reconsideration and/or reversal is warranted because the Court erred in its analysis of Defendant Holloway's action with respect to both establishing a pattern or policy and for purposes of discrete acts and in discussion of the deliberate indifference of the Okanogan County Sheriff's Office ("OCSO") in the form of failure to supervise and reprimand.  ECF No. 29 at 2.  Further, she requests amendment to show OCSO acted as a final policymaker and seeks clarification on the status of the dismissal of state law claims.  *Id*. at 14, 18.  Defendants have each responded, opposing the disruption of the Court's dismissal of Plaintiff's claims.  ECF Nos. 34 and 35.

**DISCUSSION**

**I.      Standard of Review**

Plaintiff brings this motion for reconsideration under Federal Rule of Civil Procedure 59(e).  ECF No. 29 at 5.  Defendants contend that the proper standard is

1   analysis under Federal Rule of Civil Procedure 60(b)(6).  ECF Nos. 34 at 5 and 35

2   at 2–3.  Generally, a motion for reconsideration of a judgment may be reviewed

3   under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a

4   judgment) or Federal Rule of Civil Procedure 60(b) (relief from judgment).  *Sch.*

5   *Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

6        Rule 59(e) authorizes motions "to alter or amend a judgment," provided

7   such motions are filed within twenty-eight days of the judgment.  The purpose of

8   Rule 59(e) is to examine matters within a decision on the merits and allow a

9   district court to rectify mistakes close in time to rendering a judgment.  *White v.*

10  *N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450–51 (1982).  In general,

11  "[r]econsideration is appropriate if the district court (1) is presented with newly

12  discovered evidence, (2) committed clear error or the initial decision was

13  manifestly unjust, or (3) if there is an intervening change in controlling law."  *Sch.*

14  *Dist. No. 1J*, 5 F.3d 1255 at 1263; *United Nat. Ins. Co. v. Spectrum Worldwide,*

15  *Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (citation omitted); *see also Turner v.*

16  *Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

17       In contrast, Rule 60(b) allows a party to seek relief from a final judgment

18  beyond the twenty-eight-day limit of Rule 59(e).  However, Rule 60(b) has six

19  particularized grounds for relief, providing that "a court may relieve a party . . .

20  from a final judgment, order, or proceeding for the following reasons: (1) mistake,

1  inadvertence surprise, or excusable neglect; (2) newly discovered evidence []; (3)

2  fraud []; (4) a judgment is void; (5) a judgment has been satisfied, released, or

3  discharged or (6) any other reason that justifies relief."  Specifically, Rule 60(b)(6)

4  has been deemed the "extraordinary circumstances" remedy, to be used sparingly

5  and only in situations which would prevent manifest injustice.  *United States v.*

6  *Alpine Land & Reservoir Co*., 984 F.2d 1047, 1049 (9th Cir.), *cert. denied*, 510

7  U.S. 813 (1993); *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982).

8    The Court granted Defendants' Motion to Dismiss on February 12, 2024.

9  ECF No. 27.  Plaintiff filed this Motion for Reconsideration on March 11, 2024,

10  exactly twenty-eight days after the Court rendered judgment, making her claim

11  timely under Rule 59(e).  Further, reconsideration of a final judgment, such as a

12  grant of a motion to dismiss, is properly considered under Rule 59(e).  *See*

13  *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001); *Van Derheydt*

14  *v. Cnty. of Placer*, 32 F. App'x 221, 223 (9th Cir. 2002); *Takemoto v. Richmond*

15  *Assocs*., 956 F.2d 275 (9th Cir. 1992).  Plaintiff brings this Rule 59(e) motion on a

16  theory of newly discovered evidence and legal error or manifest injustice.  ECF

17  No. 29 at 5–6.

18    However, a district court does not abuse its discretion when it disregards

19  legal arguments made for the first time on a motion to alter or amend a judgment.

20  *United Nat. Ins. Co.*, 555 F.3d at 780 (internal citations omitted); *Carroll v.*

*Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."); *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989); *see also City of Fresno v. United States,* 709 F.Supp.2d 888, 916 (E.D. Cal. 2010) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.").  As a rule, courts should be loathe to revisit prior decisions in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 817 (1988).  This principle is embodied in the law of the case doctrine, under which "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).  Therefore, whether to grant a motion for reconsideration is within the sound discretion of the court.  *Navajo Nation v. Confederated Tribes and Bands of the Yakima Nation,* 331 F.3d 1041, 1046 (9th Cir. 2003).

1    **II.    Dismissal of Defendant Holloway**

2    The Court has thoroughly reviewed Plaintiff's arguments concerning the

3    dismissal of Defendant Holloway and concludes that no error has been committed.

4    Plaintiff contends that her 42 U.S.C. § 1983 claim against Defendant Holloway is

5    timely because his conduct reflects "separate, discrete acts," each of which would

6    restart the accrual clock from 2020 and 2021.  *Pouncil v. Tilton*, 704 F.3d 568,

7    582–83 (9th Cir. 2012).  However, despite Plaintiff's insistence otherwise, her

8    claim is not analogous to the type of violation contemplated in *Pouncil* in which

9    the court found each time a prison denied the plaintiff's request for a conjugal visit

10    with his wife, a new violation of his Islamic faith occurred.  *Id.* at 583.  Each

11    discrete act began a new statute of limitations period for purposes of filing a

12    § 1983 claim.  In relevant part, the *Pouncil* court found that the denials were each

13    an "independently wrongful" act because his claim did "not rely on any acts that

14    occurred before the statute of limitations period to establish a violation" of his

15    rights.  *Id.*  "[P]ut . . . another way, the 2008 denial relied on a new application of

16    the regulation to a new request for a conjugal visit, it did not rely on the 2002

17    denial as barring all subsequent requests for conjugal visits."  *Id.*  Importantly, the

18    court in *Pouncil* also acknowledged that a federal claim accrues when the plaintiff

19    knows or has reason to know of the injury.  *Id.* at 574 (internal citations omitted).

20

1      The Court is not persuaded that Defendant Holloway's later behavior could

2  be described as "discrete acts" because Plaintiff alleges that their relationship was

3  built as the result of coercion over time.  ECF Nos. 11 at 4–6, ¶¶ 17–32, and 37 at

4  9.  As pled, the alleged nature of Defendant Holloway's power over Plaintiff

5  necessarily was developed on a foundation that he would not report Plaintiff's

6  criminal activity.  ECF No. 11 at 8–9, ¶¶ 47–48, 50–51.  She in turn was

7  uncomfortable with this power dynamic when the conduct began in 2014 and the

8  feeling continued for the duration of their relationship.  *Id.* at 14, ¶74 and 17, ¶ 89.

9  Adding to the conclusion that Defendant Holloway's actions were not

10  particularized to each incident of sexual contact, and therefore not discrete acts, the

11  criminal activity that he was allegedly safeguarding seems to be Plaintiff's same or

12  largely similar drug related activity during the entire eight-year affair.  *Id.* at 5, ¶

13  26, 6, ¶ 31, 8, ¶¶48, 50, and 17, ¶ 88 (discussing incriminating drug related activity

14  Defendant Holloway found on Plaintiff's phone sometime in 2014, 2015, or 2016).

15  Stated another way, the illicit relationship was based on the collusion of covering

16  up crimes that presumptively took place between 2014–2016, which Defendant

17  Holloway could have pursued at any point during his employment but did not.  All

18  of the conduct was dependent upon Defendant Holloway's grooming of Plaintiff,

19  starting the statute of limitations when she first felt uncomfortable with the contact.

20  *Knox v. Davis*, 260 F.3d 1009, 1014 (9th Cir. 2001).  Because Defendant

Holloway's relationship with Plaintiff is best described as "ongoing" between 2014 and 2021, ending when Defendant Holloway left OCSO, the Court has determined that the statute of limitation has run on Plaintiff's 42 U.S.C. § 1983 claim. *Pouncil*, 704 F.3d at 582 (quoting *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003)) ("[Plaintiff's] claims . . . "does not stem from the policy regarding the [denial of conjugal visits to LWOP prisoners], but rather from the individualized decisions that resulted from implementation of a policy originating from [the CDCR].");  *Wallace v. Kato,* 549 U.S. 384, 388 (2007) (holding that § 1983 claims accrue when a plaintiff has "a complete and present cause of action.").

Plaintiff also takes issue with the Court's denial to include Defendant Holloway's conflicting statements regarding his relationship with her, and requests the Court consider it now as newly discovered evidence in support of her Rule 59(e) motion.[1]  ECF No. 36 at 7.  However, evidence that Defendant Holloway

---

[1] Plaintiff requests the Court to invoke equitable tolling because Defendant Holloway made false statements.  ECF No. 24 at 3.  Even if applicable, Washington law requires that a plaintiff seeking equitable tolling of the statute of limitations based on a defendant's false statements show, "(1) the plaintiff has exercised diligence, (2) the defendant's bad faith, false assurances, or deception

was engaging in a sexual relationship with Plaintiff in 2017 and 2019 has no

bearing on the reconsideration of this matter.  Even if the Court were to consider

his admission, the Order granting Defendants' Motion to Dismiss considered each

fact in the light most favorable to Plaintiff.  ECF No. 27 at 7.  Therefore, the

revelation exposed in Defendant Holloway's Answer changes nothing about the

Court's analysis because Plaintiff maintained throughout her FAC that they were

engaged in an affair from 2014 until 2021, and the Court accepted her allegations

as true.  ECF No. 11 at 6, ¶ 30, 8, ¶ 46, and 13, ¶ 69.  In short, this newly

developed evidence, while concerning as a matter of Defendant Holloway

truthfulness and credibility, changes nothing about the Court's consideration of the

merits of the case because it reveals nothing the Court did not already accept as

true.

In terms of the state law claims, the Court finds those properly dismissed

with prejudice as well.  The Washington Law Against Discrimination ("WLAD")

interfered with the plaintiff's timely filing, (3) tolling is consistent with (a) the

purpose of the underlying statute and (b) the purpose of the statute of limitations,

and (4) justice requires tolling the statute of limitations."  *Fowler v. Guerin*, 200

Wash. 2d 110, 125 (2022).  Defendant Holloway's false statements have not

interfered with Plaintiff's timely filing, and thus this test is inapplicable.

follows a similar three-year statute of limitation per RCW 4.16.080(2), and

Plaintiff's claim is likewise time barred. *Antonius v. King Cnty*., 153 Wash. 2d

256, 261–62 (2004) ("WLAD does not contain its own limitations period.

Discrimination claims must be brought within three years under the general three-

year statute of limitations for personal injury actions.").

In sum, the Court finds claims of 42 U.S.C. § 1983, RCW 49.60, and

conspiracy are properly dismissed with prejudice for the reasons discussed in the

Order.  ECF No. 27 at 12–13.  Amendment would be futile due to the expired

statute of limitations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc*., 522 F.3d 1049,

1060 (9th Cir. 2008); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997).  This

decision means the claims are unable to be refiled in state court. *Dismissal With*

*Prejudice*, BLACK'S LAW DICTIONARY (10th ed. 2004) ("[A]fter an adjudication on

the merits, barring the plaintiff from prosecuting any later lawsuit on the same

claim.").

### III.    Dismissal of Defendant Okanogan County

Plaintiff argues that the Court erred in its *Monell* analysis, both in discussion

of the pattern of behavior at OCSO, and in its examination of deliberate

indifference by OCSO.  ECF No. 29 at 11.  The Court does not find manifest error

with either.

1    Under a *Monell* framework, a plaintiff must demonstrate: (1) he or she had a

2    constitutional right of which he was deprived; (2) the municipality had a policy; (3)

3    the policy amounts to deliberate indifference to his constitutional right; and (4)

4    "the policy is the moving force behind the constitutional violation." *Dougherty v.*

5    *City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  As previously stated, there are

6    three ways an entity may be held liable for constitutional violations under a *Monell*

7    theory of liability: first, a government may act pursuant to an expressly adopted

8    policy, second a government may act pursuant to a "longstanding practice or

9    custom," *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014), or

10   third, the person who commits the constitutional violation acts as a final

11   governmental policymaker or such an official "ratified a subordinate's

12   unconstitutional decision or action and the basis for it." *Clouthier v. County of*

13   *Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010).  Here, Plaintiff relied on a

14   theory that Defendant Okanogan County had either an informal policy of

15   constitutional violations or was deliberately indifferent to the constitutional rights

16   of herself and others through a failure to train, supervise, or discipline offending

17   deputies.  ECF No. 18 at 14–15.  This was supported, Plaintiff argued, by OCSO's

18   improper deletion of official records.  *Id*.

19   However, Plaintiff's FAC failed to allege (1) the relationships described

20   were not consensual in the sense that the women involved felt that they were

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION ~ 11

1   required to engage in sexual activity with the members of OCSO (including

2   Defendant Holloway) or face legal consequences and (2) that more often than not,

3   OCSO knew or would have a credible reason to know that the activity was taking

4   place under the color of law and still chose not to act.  *See Starr v. Baca*, 652 F.3d

5   1202, 1207 (9th Cir. 2011).  Instead, in a rambling and repetitive set of facts,

6   Plaintiff either made claims that did not connect the activity involving potential

7   victims with the subsequent knowledge of OCSO or did not suggest that the sexual

8   activity was in exchange for protection from law enforcement.  Stated a different

9   way, the facts in the FAC did not suggest that (1) crimes were being committed, or

10   (2) that OCSO had a reason to know about a *quid pro quo* relationship.

11       To demonstrate an informal policy or custom, a plaintiff must show within

12   an entity the "existence of a widespread practice that ... is so permanent and well

13   settled as to constitute a 'custom or usage' with the force of law."  *Gillette v.*

14   *Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (quoting *City of St. Louis v.*

15   *Praprotnik*, 485 U.S. 112, 127 (1988)).  This showing requires that the conduct

16   have consistency and therefore cannot be sporadic.  *See Trevino v. Gates*, 99 F.3d

17   911, 918 (9th Cir. 1996); *see also Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th

18   Cir. 1984) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970))

19   ("In describing 'custom or usage,' the Court used such phrases as 'persistent and

20   widespread ... practices,' 'systematic maladministration' of the laws, practices that

are 'permanent and well settled,' and 'deeply embedded traditional ways of carrying out ... policy.' ").  But the best way to describe the contents of Plaintiff's FAC was just that: sporadic.  As the Court discussed and rehashes below, there were circumstances described in the Complaint in which OCSO knew about activity and did not investigate, which was acknowledged in the Order granting dismissal.  However seemingly overlooked by Plaintiff in her request for reconsideration, the Court stated she did not provide sufficient information such that the Court could find the conduct consistent enough to be an informal policy of OCSO.  ECF No. 27 at 18.

Plaintiff criticizes the Court for not considering the fact that a single officer's activities may form the base for a custom or policy, analogizing to *Beck v. City of Pittsburgh*, 89 F.3d 966, 975 (3d Cir. 1996), which the Ninth Circuit has favorably referenced.  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015).  In determining that past complaints against a single officer could be used to establish knowledge of conduct by a police department, the court in *Beck* opined "the plaintiff offered in evidence a series of actual written civilian complaints of similar nature, most of them before and some after the Beck incident, containing specific information pertaining to the use of excessive force and verbal abuse by [the officer at issue]." 89 F.3d at 973.  While acknowledging Plaintiff's contention that OCSO records are deficient, the matter at hand is not

1   similar to *Beck* for a number of related reasons.  Unlike in *Beck,* which involved

2   excessive force reported by the individual on the receiving end of the violence at

3   the hands of a police officer, the relevant complaints at issue in this matter often

4   did not come from the women involved, and instead were lodged by third parties.

5   89 F.3d at 968; ECF No. 11 at 3, ¶ 12, 32, ¶¶ 184, 186.  Relatedly, during the

6   course of OCSO investigations, Plaintiff and other women denied having sexual

7   relationships with members of OSCO including Defendant Holloway, consensual

8   or otherwise.  ECF No. 11 at 6, ¶ 33, and 33, ¶ 196.  In other cases, there is no

9   suggestion that OCSO was ever alerted to the conduct.  *Id.* at 25, ¶ 137, 26, ¶ 145,

10  and 42, ¶ 235.  As the Court previously stated, it is impossible to establish a

11  "through line" connecting incidents that may be considered constitutional

12  violations with the incidents as described above if OCSO either was never alerted

13  to a potential violation while on duty or when the investigation turned over that

14  nothing was amiss.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

15  658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable solely

16  because it employs a tortfeasor—or, in other words, a municipality cannot be held

17  liable under § 1983 on a *respondeat superior* theory.").  Plaintiff's allegations are

18  too tenuous to allow the Court to infer a pattern akin to those established by the

19  records in *Beck.*

20

Plaintiff also faults the Court for not considering the lack of OCSO reprimand as the basis for *Monell* liability.  ECF No. 29 at 12.  However, as discussed in the previous Order, and contained above, the lengthy Complaint was devoid of sufficient information to draw an inference that OCSO was aware or should have been aware of a problem based on its deputies' actions.[2]  ECF No. 27 at 23.  And at certain points, it took corrective action when made aware of potential violations.  The Ninth Circuit has held that custom or practice *Monell* liability attaches when an entity fails to reprimand or discharge an employee for committing a constitutional violation while acting under the color of law.  *Gillette*, 979 F.2d at 1349; *Henry v. Cnty. of Shasta*, 137 F.3d 1372 (9th Cir. 1998); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).  And *Monell* liability may also be inferred from a custom or policy of failing to investigate noted constitutional violations.  *Velazquez,* 793 F.3d at 1027 (determining that a jury should have been permitted to see evidence of past complaints to establish that a county had a custom of failing to investigate); *Hunter v. Cnty. of Sacramento*, 652

---

[2] In the materials filed, Defendant Holloway's statements that he and Plaintiff were engaged in a sexual relationship does not suggest that OCSO had any knowledge of such conduct and will not be considered as Rule 59(e) "new evidence" for the same reasons as stated above.

F.3d 1225, 1235 (9th Cir. 2011) (finding the district court erred by not including a jail's failure to investigate (and therefore a county's failure to investigate) as part of jury instruction regarding *Monell* liability).

To reiterate here, the Complaint as pled did not sufficiently describe either situation. Though Plaintiff finds fault with the Court's conclusion drawn in the face of the facts as she stated them, she was given the opportunity to tell OCSO about the relationship with Defendant Holloway and declined to do so. ECF No. 11 at 6, ¶ 33 (First Amended Complaint). The Complaint details other similar situations where OSCO did investigate. *Id*. at 33, ¶ 196, 42, ¶¶ 240–41. After completing some investigations, OCSO did reprimand some officers. *Id*. at 45, ¶ 259, ¶ 261. As discussed above, other allegations do not suggest that OCSO ever knew about the relationships between officers and women who were involved with criminal activity, or there is not a suggestion that these relationships would give rise to liability. Finally, as was noted in the Order, there are cases in which OCSO knew of relationships between deputies and women who could have been pursued criminally and did not investigate or took no action to reprimand, including Defendant Holloway's relationship with M.G. which Plaintiff alleges was not properly investigated. *Id*. at 23, ¶ 124, 43, ¶ 245, 46, ¶ 268. As stated above, these instances are taken as sporadic in context with the rest of the incidents in the FAC, and thus do not give rise to *Monell* liability through either an informal policy or

deliberate indifference via a failure to supervise or reprimand. *See Trevino*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks omitted) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." A district court must consider five factors when deciding whether to grant leave: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Here, Plaintiff herself affirmatively denied having a relationship with Defendant Holloway. As pertains to Plaintiff's rights, Okanogan County had no custom or policy allowing the conduct and confronted the Plaintiff who denied the conduct. Plaintiff has already amended her Complaint once. ECF No. 11 (First Amended Complaint). Further amendment would be futile with respect to Plaintiff's claims.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiff's Motion to Reconsider (ECF No. 29) is **DENIED.**

The District Court Executive is directed to enter this Order and furnish copies to counsel. The file remains **CLOSED**

1

DATED June 11, 2024.

2



3

THOMAS O. RICE
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION ~ 18